**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| JOSHUA JOHNKE, Independent Administrator of the ESTATE OF VICKY PALACIOS, Deceased, <br>       Plaintiff, <br><br>       v. <br><br> FRANCISCO ESPINAL-QUIROZ, Individually, and as agent, servant, and/or employee of ESPINAL TRUCKING, EAGLE TRANSPORT GROUP, LLC, STEEL WAREHOUSE, INC., STEEL WAREHOUSE CO., LLC and M AND S MANAGEMENT CO., INC., <br>       Defendants. | ) <br> ) <br> ) <br> )   Case No. 14-cv-6992 <br> ) <br> ) <br> )   Judge Robert M. Dow, Jr. <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) |
| MOSES BLOPLEH, individually, and as Special Administrator of the Estate of Ulrike Blopleh, deceased, and AS PARENT AND NEXT FRIEND OF: A.B., a minor, <br>       Plaintiff, <br><br>       v. <br><br> FRANCISCO ESPINAL-QUIROZ, Individually, and d/b/a ESPINAL TRUCKING, STEEL WAREHOUSE INC., an Indiana Corporation, STEEL WAREHOUSE COMPANY LLC, an Indiana Limited Liability Company, and EAGLE TRANSPORT GROUP, LLC, an Indiana Limited Liability Company, <br>       Defendants. | ) <br> ) <br> ) <br> ) <br> )   Case No. 14-cv-7364 <br> ) <br> )   Judge Robert M. Dow, Jr. <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) |
| JOEL T. OSBURN and LESLEY PAIGE OSBURN, as Independent co-Administrators of the Estates of TIMOTHY J. OSBURN, Deceased, and PIPER BRITTON, Deceased, and GWENDOLYN BRITTON, as Independent Administrator of the Estate of KIMBERLY BRITTON, <br>       Plaintiffs, <br><br>       v. <br><br> ESPINAL TRUCKING, FRANCISO ESPINAL QUIROZ, EAGLE TRANSPORT GROUP, LLC, STEEL WARHOUSE, INC., STEEL WAREHOUSE COMPANY LLC and M AND S MANAGEMENT CO., INC. <br>       Defendants. | ) <br> ) <br> ) <br> ) <br> )   Case No. 14-cv-7917 <br> ) <br> )   Judge Robert M. Dow, Jr. <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) |

## MEMORANDUM AND OPINION ORDER

These three consolidated lawsuits relate to a multi-vehicle accident that occurred in Will County, Illinois on July 21, 2014. Defendant Espinal-Quiroz, who was driving a semi-tractor carrying a semi-trailer, collided with several passenger vehicles that were stopped in traffic on Interstate 55, resulting in multiple fatalities. Plaintiffs—administrators of the estates and/or family members of those killed in the accident—sued multiple Defendants, including Eagle Transport Group LLC, the owner of the semi-trailer that Defendant Espinal-Quiroz was carrying.

Now before the Court are Defendant Eagle Transport Group LLC's motions to dismiss all claims brought against it in each of the three above-captioned lawsuits. (14-cv-6992 [54]; 14-cv-7364 [46]; and 14-cv-7917 [56].) For the reasons stated below, Defendant's motions are granted in part and denied in part. All dismissals are without prejudice. Within 14 days of this order, Plaintiffs and Defendant Eagle Transport are instructed to file a proposed discovery schedule incorporating Defendant Eagle Transport into the discovery currently ongoing with the other Defendants. To the extent that the parties are unable to agree on a schedule, they should present their respective positions on any disputed issues in the proposed order.

As a housekeeping matter, as articulated in open court on December 3, 2015 and January 26, 2016, Defendant Steel Warehouse Company LLC has voluntarily withdrawn its motions to dismiss in these cases. The Clerk is therefore instructed to strike those filings (14-cv-6992 [63]; 14-cv-7364 [60]; and 14-cv-7917 [65]) as active motions on the Court's docket.

## I. Background[1]

At approximately 2:30 p.m. on July 21, 2014, northbound traffic on Interstate 55 in Will County, Illinois had come to a standstill due to road and bridge construction. Defendant

---

[1] The Court accepts as true the facts alleged in Plaintiffs' operative complaints and makes all reasonable inferences in their favor. See *McReynolds v. Merrill Lynch & Co.*, 694 F.3d 873, 879 (7th Cir. 2012).

Francisco Espinal-Quiroz, owner of Defendant Espinal Trucking, was driving a semi-truck (composed of a semi-tractor and a semi-trailer) on northbound I-55, having just completed a delivery for the Steel Warehouse Defendants. Mr. Espinal-Quiroz—who allegedly is blind in his right eye and, at the time, lacked the minimum visual acuity required to lawfully operate a commercial motor vehicle in the State of Illinois—failed to heed the signs warning of the upcoming construction zone as he drove his vehicle into the stopped traffic at a speed of approximately 65 mph. The collision resulted in multiple fatalities.

Defendant Espinal-Quiroz was the sole driver for his company, Defendant Espinal Trucking. The semi-trailer that he was carrying at the time of the accident was leased to him by Defendant Eagle Transport Group LLC ("Eagle Transport"). Mr. Espinal-Quiroz used to work for Eagle Transport as a truck driver, and Eagle Transport allegedly maintained a driver-qualification file on Mr. Espinal-Quiroz that included physical examinations reflecting his visual impairment. Because of this, Plaintiffs allege that Eagle Transport knew or should have known that Mr. Espinal-Quiroz did not meet the minimum vision standards required of a commercial motor vehicle operator, but leased the semi-trailer to him anyway.

Plaintiffs bring a combined 20 claims against Defendant Eagle Transport, all pursuant to Illinois law.[2] Specifically, Plaintiffs in the Johnke case (14-cv-6992) and the Osburn and Britton case (14-cv-7917) raise wrongful death and survival claims predicated on underlying acts of negligence. These Plaintiffs seek to hold Defendant Eagle Transport liable for its own acts of negligence (predominantly based on alleged violations of various provisions in the Federal Motor Carrier Safety Regulations ("FMCSR")), and for the negligent acts of others (through agency, employer–employee, and vicarious liability theories). By contrast, Plaintiff Blopleh (14-cv-7364) alleges only claims of direct negligence against Defendant Eagle Transport.

---

[2] These cases are in federal court based on diversity of citizenship pursuant to 28 U.S.C. § 1332.

## II.    Legal Standard

In reviewing the sufficiency of a complaint, a district court must accept all well-plead facts as true and draw all permissible inferences in favor of the plaintiff. *Agnew v. Nat'l Collegiate Athletic Ass'n*, 683 F.3d 328, 334 (7th Cir. 2012). The Federal Rules of Civil Procedure require only that a complaint provide the defendant with "fair notice of what the * * * claim is and the grounds upon which it rests." *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). The Supreme Court has described this notice-pleading standard as requiring a complaint to "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). While factual allegations must be accepted as true, legal conclusions may not be considered. *Id.*

## III.    Analysis

Defendant Eagle Transport has moved to dismiss each of the 20 claims brought against it by Plaintiffs in their respective operative complaints (in each case, the second amended complaint). Specifically, Defendant Eagle Transport seeks dismissal of Counts 3–4 of the Johnke complaint, Counts 38–49 of the Blopleh complaint, and Counts 7–12 of the Osburn and Britton complaint, to the extent those Counts invoke Eagle Transport.

Defendant raises the same arguments for dismissal in all three cases: (1) that all claims against Eagle Transport—the owner and lessor of the semi-trailer involved in the accident—are preempted by the Graves Amendment, 49 U.S.C. § 30106, (2) that Plaintiffs failed to adequately plead claims of employer-based liability against Eagle Transport, and (3) that Plaintiffs failed to adequately plead claims of agency-based liability against Eagle Transport.

## A.    Graves Amendment

Defendant's primary argument is that all claims against it must be dismissed pursuant to the Graves Amendment, 49 U.S.C. § 30106. That provision reads as follows:

> (a) An owner of a motor vehicle that rents or leases the vehicle to a person (or an affiliate of the owner) shall not be liable under the law of any State or political subdivision therefore, by reason of being the owner of the vehicle (or an affiliate of the owner), for harm to persons or property that results or arises out of the use, operation, or possession of the vehicle during the period of the rental or lease, if—
>
> > (1) the owner (or an affiliate of the owner) is engaged in the trade or business of renting or leasing motor vehicles; and
> >
> > (2) there is no negligence or criminal wrongdoing on the part of the owner (or an affiliate of the owner).

49 U.S.C. § 30106(a). Congress passed the Graves Amendment to protect the motor vehicle rental and leasing industry against claims of vicarious liability where the leasing or rental company's only relation to the claim is as the owner of the motor vehicle in question. See *Johnson v. XTRA Lease LLC*, 2010 WL 706037, at *3 (N.D. Ill. Feb. 24, 2010).

Defendant argues that because it was the owner of a motor vehicle that it leased to Defendant Espinal Trucking, it "shall not be liable" for damage that occurred while the vehicle was in the lessee's possession. Plaintiffs raise a number of objections to Defendant's argument, which the Court addresses one at a time.

### 1.    Affirmative Defense

Plaintiff Blopleh poses a procedural objection to Defendant's Graves Amendment argument, claiming that preemption is an affirmative defense and that it need not address affirmative defenses at the pleading stage, thus making any ruling on this issue premature. See *S.C. Johnson & Son, Inc. v. Transp. Corp. of Am., Inc.*, 697 F.3d 544, 547 (7th Cir. 2012) ("Preemption is an affirmative defense * * * [and] plaintiffs have no duty to anticipate affirmative defenses * * *."). While Plaintiff's argument is technically true, and while Graves

Amendment preemption is an affirmative defense, courts nonetheless have the authority, at least in some instances, to address the applicability of the Graves Amendment at the pleading stage.

The applicability of Graves Amendment preemption hinges on both factual and legal issues. The factual issues include whether the leased vehicle was a "motor vehicle," whether the defendant "owned" it, and whether the defendant was engaged in the trade or business of renting or leasing motor vehicles. Plaintiff correctly notes that these requirements need not be addressed (or "anticipated," to use the common term) in a complaint. Consequently, if there is a factual dispute over whether, for example, a defendant was a lessor engaged in the business of leasing motor vehicles, then the applicability of Graves Amendment preemption would not be determinable at the motion to dismiss stage. That being said, these factual issues often are apparent from the face of the complaint or are otherwise undisputed, and thus they do not serve as a roadblock to addressing the applicability of Graves Amendment preemption at the motion to dismiss stage. This is similar to situations where courts address a statute of limitations affirmative defense at the pleading stage: although a plaintiff has no obligation to address the statute of limitations in his complaint, he can "plead himself out of court" by alleging facts that affirmatively show that his claim is time barred. See *Clark v. City of Braidwood*, 318 F.3d 764, 767 (7th Cir. 2003).

The second category (the "legal" elements to a Graves Amendment claim) is different because it is based on legal claims, not factual allegations. More specifically, the "legal" elements that determine the applicability of the Graves Amendment to a particular claim are (1) whether the owner/lessor is being sued "by reason of being the owner of the vehicle," as opposed to by reason of being an employer or an agent of some other liable party, for example, and (2) whether the claim requires the plaintiff to show that the owner/lessor acted negligently or

criminally.[3] Because these elements are predicated on the legal claims as pled in the complaint itself, a plaintiff cannot avoid putting them at issue at the pleading stage.

For example, in *Carton v. General Motor Acceptance Corp.*, the Eighth Circuit affirmed dismissal of vicarious liability claims against a lessor defendant on the basis of Graves Amendment preemption. *Carton*, 611 F.3d 451, 456–57 (8th Cir. 2010). There was no dispute that the defendant was engaged in the trade or business of renting motor vehicles or that it owned the motor vehicle involved in the accident, and the defendant was being sued "by reason of being the owner of the vehicle." As such, the court was able to resolve the applicability of the Graves Amendment at the pleading stage: the direct-negligence claims survived and the vicarious liability claims did not. *Id.* at 457–59; see also *Klaybor v. Flowers Baking Co. of Batesville, LLC*, 2014 WL 5029423, at *2 (S.D. Ill. Oct. 8, 2014) (noting that "[t]he only way Plaintiff can avoid Graves Amendment preemption[] is to plead independent negligence by [Defendant]," holding that because "[t]he Complaint d[id] not set forth any facts that plausibly suggest[ed that Defendant] committed any independent act of negligence," dismissal was appropriate).

In short, assuming that there is no dispute over whether a defendant was engaged in the business of leasing motor vehicles and that it owned the motor vehicle involved in the accident, a court can assess Graves Amendment preemption at the motion to dismiss stage, dismissing any claims not based on the lessor defendant's own negligence or criminal wrongdoing that are brought "by reason of [the defendant] being the owner of the vehicle."

### 2.    In the Business of Leasing

To trigger Graves Amendment preemption, Defendant Eagle Transport must establish that it was "engaged in the trade or business of renting or leasing motor vehicles." 49 U.S.C.

---

[3] Of course, whether the defendant actually was negligent is a fact-dependent issue. But the Graves Amendment is only concerned with the legal question of whether the legal claim requires a showing of direct negligence.

§ 30106(a)(1). Plaintiffs Johnke, Osburn, and Britton (not Blopleh) maintain that Defendant was *not* "engaged in the trade or business of renting or leasing motor vehicles" based on Defendant's admission that it is "in the business of leasing trucks and trailers *and* delivering product to its customers." See Affidavit of Gene Shirk, Case 14-cv-7917 [57-1, ¶ 3 (emphasis added)]; see also Case 14-cv-6992 [67-1 (screen shot of Eagle Transport's webpage)]. Setting aside the fact that Plaintiffs' argument is based on material outside of the pleadings,[4] Plaintiffs have not provided any support for this notion that a defendant must *only* engage in the business of renting or leasing in order to trigger Graves Amendment preemption. Plaintiffs' argument is not persuasive.

Plaintiffs do not contest that Defendant Eagle Transport was engaged in the business of renting or leasing when it leased equipment to Defendant Espinal Trucking—a fact that is apparent from the face of Plaintiffs' complaints and the lease agreement itself [see 57-2].[5] Accordingly, the Court concludes that Defendant Eagle Transport was "engaged in the trade or business of renting or leasing motor vehicles" as required by 49 U.S.C. § 30106(a)(1).

### 3.    Direct Negligence

Having established that Defendant Eagle Transport was engaged in the business of leasing, the next step to determining the scope of preemption in these cases is to separate out the

---

[4] The Johnke, Osburn, and Britton Plaintiffs' inclusion of a screen shot of Eagle Transport's webpage (Case 14-cv-6992 [67-1]) arguably is appropriate because in opposing a Rule 12(b)(6) motion, a plaintiff may elaborate on his or her factual allegations so long as the new elaborations are "consistent with the pleadings," and may submit materials outside the pleadings "to illustrate the facts the party expects to be able to prove." *Geinosky v. City of Chicago*, 675 F.3d 743, 745 n.1 (7th Cir. 2012). However, Defendant Eagle Transport's submission of an affidavit in support of its motion to dismiss is not proper, and the Court will not consider that exhibit for purposes of this motion. See, *e.g.*, *Loeb Indus., Inc. v. Sumitomo Corp.*, 306 F.3d 469, 479 (7th Cir. 2002) ("[I]f the district court wishes to consider material outside the pleadings in ruling on a motion to dismiss, it must treat the motion as one for summary judgment and provide each party notice and an opportunity to submit affidavits or other additional forms of proof.").

[5] If the terms of a contract are central to a complaint, a court may consider them in ruling on a motion to dismiss. See *Hongbo Han v. United Continental Holdings, Inc.*, 762 F.3d 598, 601 n.1 (7th Cir. 2014). Here, the lease agreement is central to the complaint because it shows that Defendant Eagle Transport leased the semi-trailer to Defendant Espinal Trucking. The Court may consider the lease.

claims that seek to hold Defendant indirectly liable from those alleging direct negligence against Defendant, dismissing the former (if they are brought "by reason of [Defendant] being the owner of the vehicle," as discussed more in agency and employer sections below) and not the latter. 49 U.S.C. § 30106(a)(2). Put differently, as Plaintiffs correctly note, even if preemption is appropriate, it only applies to indirect liability claims under state law, and not to all 20 of Plaintiffs' claims against Defendant Eagle Transport. Defendant does not disagree with this principle, but argues that because its *only role* in this case is as an owner–lessor, dismissal of *all* claims is required. The only way to resolve this issue is by examining Plaintiffs' allegations on a count-by-count basis.

Beginning with the Johnke complaint (14-cv-6992 [45]), Plaintiff Johnke names Eagle Transport as a Defendant in Count 3 (Negligence/Wrongful Death) and Count 4 (Negligence/Survival). In both claims, Plaintiff Johnke alleges that Eagle Transport is vicariously liable for the acts of Defendant Espinal-Quiroz, but also alleges that Eagle Transport was directly negligent (*e.g.*, by permitting Defendant Espinal-Quiroz to operate a commercial motor vehicle while legally blind in one eye, for failing to properly maintain the trailer, for failing to inspect the trailer, etc.). In other words, Plaintiff Johnke combined all of his theories of liability against Defendant Eagle Transport, both direct and indirect, into one count. Thus, Graves Amendment preemption is warranted here, but only in part. Specifically, Counts 3 and 4 must be dismissed in part to the extent that those counts assert claims of vicarious liability against Defendant Eagle Transport by reason of Defendant being the owner of the semi-trailer (*i.e.*, not those indirect claims brought by reason of Defendant being an employer or agent).

Similarly, Plaintiffs Osburn and Britton raise three wrongful death claims and three survival claims against Defendant Eagle Transport in Counts 7 through 12 of their operative

complaint (14-cv-7917 [44]). These claims are nearly identical to those in the Johnke complaint in that Plaintiffs Osburn and Britton allege a mix of vicarious liability and direct-negligence allegations within a single claim. As such, Counts 7 through 12 are dismissed in part to the extent that those counts assert claims of vicarious liability against Defendant Eagle Transport by reason of Defendant being the owner of the semi-trailer.

Plaintiff Blopleh's claims are different, and are not subject to Graves Amendment preemption. Specifically, Plaintiff Blopleh raises 12 claims against Defendant Eagle Transport directly (all negligence/wrongful death claims brought under Illinois law), numbered Counts 38 through 49 (14-cv-7364 [39]). In Plaintiff Blopleh's aiding and abetting claims (Counts 38, 41, 44, and 47), he alleges that Defendant Eagle Transport was aware that Defendant Espinal-Quiroz unqualified to operate a commercial motor vehicle according to Illinois law and federal regulations, but leased to him anyway. In Plaintiff Blopleh's negligent entrustment claims (Counts 39, 42, 45, and 48), he alleges direct negligence against Defendant Eagle Transport for knowingly leasing a vehicle to an unqualified driver. Finally, in Plaintiff Blopleh's "violation of commercial driver's license standards" claims (Counts 40, 43, 46, 49), he alleges that Defendant Eagle Transport leased a vehicle to Defendant Espinal-Quiroz despite knowing that his operation of that vehicle would violate medical restrictions imposed on him by the FMCSR. Because Plaintiff Blopleh does not seek to hold Defendant Eagle Transport vicariously liable pursuant to any state law claims, Graves Amendment preemption does not apply.

In summary, because only 8 of the 20 claims against Defendant Eagle Transport contain allegations based on vicarious liability (and then, only in part), only those claims—Counts 3 and 4 of the Johnke complaint and Counts 7 through 12 of the Osburn and Britton complaint—are subject to Graves Amendment preemption, and only to the extent that the indirect claims are

brought by reason of Defendant being the owner of the semi-trailer (*i.e.*, excluding employer and agency claims).

### 4.     Preemption When State Law Parallels Federal Law

Plaintiff Blopleh raises two additional arguments against Graves Amendment preemption that warrant mentioning here (despite the Court's conclusion that Plaintiff Blopleh's claims are not subject to preemption). First, Plaintiff says that this Court lacks jurisdiction to preempt Illinois motor carrier safety laws because the Secretary of Transportation has sole authority to preempt state laws and regulations regarding motor carrier safety in interstate commerce. Second, Plaintiff says that federal preemption is not appropriate when a state adopts laws parallel to federal laws, arguing that because Illinois adopted regulations that mirror the FMCSR, any preemption of state law would in essence be a preemption of the corresponding federal regulation. These arguments are not persuasive.

Plaintiff Blopleh's claims against Defendant Eagle Transport are brought pursuant to the Illinois Wrongful Death Act, based on Defendant's underlying acts of negligence. Plaintiff *is not* suing Defendant for violating state or federal motor carrier regulations directly. Put differently, the Illinois Wrongful Death Act "provides a mechanism for suit to be brought by the personal representative of a decedent whose death was 'caused by a wrongful act, neglect, or default, and the act, neglect or default is such as would, if death had not ensued, have entitled the party injured to maintain an action and recover damages in respect thereof.'" *Wilson v. City of Chicago*, 758 F.3d 875, 879 (7th Cir. 2014) (quoting 740 ILCS 180/1). In Plaintiff Blopleh's case, the alleged "wrongful act" is negligence, which Plaintiff intends to prove in myriad ways, including by establishing that Defendant Eagle Transport violated various federal and state safety regulations. But while Plaintiff's allegations of negligence may be predicated on violations of

state and federal motor carrier safety laws, the claims themselves are still brought pursuant to the Illinois Wrongful Death Act. As such, the question before this Court is whether the Graves Amendment preempts claims brought under the Illinois Wrongful Death Act: a question that this Court retains jurisdiction to resolve. This Court *is not* preempting any claims brought pursuant to state or federal motor carrier regulations, for no such claims have been presented.

### B.      Failure to State a Claim: Employer and Agency Liability

Defendant Eagle Transport also argues that certain of Plaintiffs' claims are inadequate as a matter of law. Specifically, Defendant points to Plaintiffs' claims attempting to hold it liable based on its alleged role as a "statutory employer," arguing that the plain language of the FMCSR and the lease agreement between Defendant Eagle Transport and Defendant Espinal Trucking establish that no such relationship existed. Defendant also seeks dismissal of Plaintiffs' claims that rely on a theory of agency, arguing that nothing in Plaintiffs' complaints adequately alleges the existence of an agency relationship between Defendant Eagle Transport and any other Defendant.

### 1.      Statutory Employer Liability

Defendant Eagle Transport moves to dismiss Plaintiffs' claims seeking to hold it liable as a "statutory employer" pursuant to 49 C.F.R. §§ 383.5 and 390.5 of the FMCSR. Statutory employer liability is a theory "under which employer liability is imposed even when an employment relationship does not technically exist." *Dolter v. Keene's Transfer, Inc.*, 2008 WL 3010062, at *3 (S.D. Ill. Aug. 5, 2008). Many of Plaintiffs' direct and indirect negligence claims against Defendant Eagle Transport are based on employer liability, in that Plaintiffs allege that Defendant had certain legal duties because of its role as an employer (direct) and/or that Defendant, as a statutory employer, is vicariously liable for the negligent acts of its statutory

employee (indirect).[6] Defendant argues that employer liability cannot exist in this case based on (a) the express language of the FMCSR and (b) the lease agreement between Defendant Eagle Transport and Defendant Espinal Trucking.

### a.        Interplay with the Graves Amendment

As an initial matter, there is a question as to whether Plaintiffs' "statutory employer" claims, in whole or in part, are preempted by the Graves Amendment. To be clear, 49 C.F.R. §§ 383.5 and 390.5 simply define the terms "employee" and "employer" and are not themselves bases for liability;[7] employer liability has to come from some other provision in the FMCSR. For example, Plaintiff Blopleh alleges Defendant Eagle Transport violated 49 C.F.R. § 383.37, which says that an employer may not permit a driver to operate a commercial motor vehicle without a

---

[6] Plaintiff Blopleh attempts to distance himself from the so-called "statutory employment doctrine," which he alleges is a basis for *respondeat superior* liability. Instead, Plaintiff Blopleh correctly notes that his employer-based claims (Counts 40, 43, 46, and 49) seek to hold Defendant Eagle Transport *directly* liable for its own duties as an employer, not *indirectly* liable for the duties of its statutory employee. While this is an accurate distinction, it does not defeat Defendant's argument that it cannot be held liable as an employer under the FMCSR, which applies equally to direct- and indirect-liability claims.

[7] "**Employee** means any operator of a commercial motor vehicle, including full time, regularly employed drivers; casual, intermittent or occasional drivers; leased drivers and independent, owner-operator contractors (while in the course of operating a commercial motor vehicle) who are either directly employed by or under lease to an employer.

**Employer** means any person (including the United States, a State, District of Columbia or a political subdivision of a State) who owns or leases a commercial motor vehicle or assigns employees to operate such a vehicle."

49 C.F.R. § 383.5.

"**Employee** means any individual, other than an employer, who is employed by an employer and who in the course of his or her employment directly affects commercial motor vehicle safety. Such term includes a driver of a commercial motor vehicle (including an independent contractor while in the course of operating a commercial motor vehicle), a mechanic, and a freight handler. Such term does not include an employee of the United States, any State, any political subdivision of a State, or any agency established under a compact between States and approved by the Congress of the United States who is acting within the course of such employment.

**Employer** means any person engaged in a business affecting interstate commerce who owns or leases a commercial motor vehicle in connection with that business, or assigns employees to operate it, but such terms does not include the United States, any State, any political subdivision of a State, or an agency established under a compact between States approved by the Congress of the United States."

49 C.F.R. § 390.5.

valid commercial driver's license. Similarly, Plaintiffs allege that Defendant violated 49 C.F.R. § 390.11, which says that an employer must require its drivers to observe of all duties or prohibitions set forth in the Motor Carrier Safety Regulations. In these examples, Graves Amendment preemption wouldn't apply anyway because the provision imposes a duty directly on the statutory employer, meaning that success on these claims is predicated on a finding of employer/owner/lessor negligence. See 49 U.S.C. § 30106(a)(2).

The more difficult question arises from claims that seek to hold a statutory employer vicariously liable for the negligence of its statutory employee absent any alleged negligence on the part of the statutory employer. In other words, can a plaintiff maintain vicarious liability claims against an owner/lessor by alleging that the owner/lessor was the statutory employer of the lessee, thereby avoiding Graves Amendment preemption? At least one court has answered that hypothetical in the affirmative, focusing on the "by reason of being the owner of the vehicle" provision of the statute. See *Sentry Select Ins. Co. v. Hosmer*, 2011 WL 534353, at *8 (W.D. Mo. Feb. 4, 2011) ("By the plain meaning of its text, the Graves Amendment precludes only liability by reason of being the owner of the vehicle. It does not preclude liability by reason of being an employer."). This Court agrees. The Graves Amendment was designed to protect rental companies who are sued simply because they own a vehicle that was involved in an accident. Agency and employer-based theories of liability presuppose a level of involvement by the lessor that goes beyond simply owning the vehicle, thereby putting such claims beyond the scope of the Graves Amendment.

### b.    Failure to State a Claim

Defendant Eagle Transport argues that even if Plaintiffs' statutory-employer claims are not preempted by the Graves Amendment, Plaintiffs' claims still fail based on the plain language

of the FMCSR. Defendant relies on two opinions from courts in this circuit that have read the FMCSR consistently with the Graves Amendment, concluding that, "[i]n short, the FMCSR imposes liability on carrier–lessees and not equipment owners or lessors." *Johnson*, 2010 WL 706037, at *4 (rejecting a statutory-employer argument and granting summary judgment in favor of an owner/lessor based on Graves Amendment preemption) (citing *Dolter*, 2008 WL 3010062, at *3); see also *Simpson v. Empire Truck Lines, Inc.*, 571 F.3d 475, 477 (5th Cir. 2009) ("The FMCSR require[s] the leases to provide that the carrier has exclusive possession, control, and use of the equipment and assumes complete responsibility for its operation for the duration of the lease."). The argument, then, is because Defendant Eagle Transport owned the semi-trailer in question and leased that semi-trailer to Defendant Espinal Trucking, and because there are no plausible allegations that Defendant Eagle Transport was a carrier–lessee in this case, Plaintiffs' employer-based liability claims brought under the FMCSR must be dismissed. The Court agrees.

The Court concurs in the *Johnson* court's observation that "the FMCSR imposes liability on carrier–lessees and not equipment owners or lessors." *Johnson*, 2010 WL 706037, at *4; see also *Dolter*, 2008 WL 3010062, at *3 (same); *Guinn v. Great West Cas. Co.*, 2010 WL 4811042, at *7 (W.D. Okla. Nov. 19, 2010) (same). Although *Johnson* was resolved at the summary judgment stage, there was no substantive motion to dismiss order, and the court's ruling was legal in nature and not predicated on any factual issues (*i.e.*, it was based on plaintiff's "misplaced" reliance on the definition of "employer" in 49 C.F.R. § 390.5).[8] So too here, there is no factual dispute that Defendant Eagle Transport owned the semi-trailer involved in the accident and that it leased that semi-trailer to Defendant Espinal Trucking, nor is there any

---

[8] Plaintiff Blopleh tries to distinguish his employer-based liability claims in several ways: (1) that he relies on the definition of employer in 49 C.F.R. § 383.5, (2) that he relies on an employer-liability statute that comes from the Commercial Motor Vehicle Safety Act of 1986, and (3) that his claim is one of direct liability against Defendant, not a *respondeat superior* claim. These distinctions do not alter the fact that the FMCSR, as a whole, imposes liability on carrier–lessees and not equipment owners or lessors.

allegation (plausible or otherwise) that Defendant Eagle Transport was a carrier–lessee. See *Dolter*, 2008 WL 3010062, at *3–4 (dismissing statutory-employer claims at the motion to dismiss stage).

Although Defendant Espinal Trucking could be deemed an employer under the FMCSR, Defendant Eagle Transport—whose only plausibly-pled role in this case was as the owner and lessor of the commercial motor vehicle—cannot. Plaintiffs do not cite to any cases where an owner/lessor was also considered an employer for purposes of liability under the FMCSR. Plaintiffs' reliance on a broad reading of the definition of "employer" in 49 C.F.R. §§ 383.5 and 390.5 to include lessors such as Defendant Eagle Transport is not persuasive, and does not alter the fact that the FMCSR imposes liability on carrier–lessees and not equipment owners or lessors. Thus, Plaintiffs' negligence claims based on statutory-employer liability under the FMCSR are not plausible, and must be dismissed. This dismissal is without prejudice should Plaintiffs find themselves able to allege within the bounds of Fed. R. Civ. P. 11(b) that Defendant Eagle Transport was a carrier–lessee and not simply an owner/lessor.

## 2. Agency Liability

Defendant Eagle Transport also moves to dismiss all of Plaintiffs Johnke, Osburn, and Britton's claims that seek to hold Eagle Transport liable under a theory of agency (Plaintiff Blopleh raises no such claims), arguing that Plaintiffs failed to allege a plausible agency relationship between Eagle Transport and any other Defendant.

Plaintiffs rely on *Dolter v. Keene's Transfer, Inc.*, 2008 WL 3010062 (S.D. Ill. Aug. 5, 2008), where the parties agreed that the Graves Amendment barred liability against a motor vehicle lessor, but contested whether liability could be based on an agency theory. The court entertained the argument based on its assumption that "state law of agency can provide a basis

for holding a trailer owner vicariously liable for the acts of others in the scope of their authority." *Dolter*, 2008 WL 3010062, at *2 (citing *Schramm v. Foster*, 341 F. Supp. 2d 536 (D. Md. 2004)). However, the court ultimately concluded that the plaintiff did not sufficiently plead an agency relationship and therefore dismissed the plaintiff's agency theory of liability. *Id.* at *3.

Agency is a "fiduciary relationship that arises when one person (a 'principal') manifests assent to another person (an 'agent') that the agent shall act on the principal's behalf and subject to the principal's control, and the agent manifests assent or otherwise consents so to act." Restatement (Third) Agency § 1.01 (2006). Ordinarily, the question of whether an agency relationship existed is a question of fact that is not properly resolved on a motion to dismiss. See, *e.g.*, *Semitekol v. Monaco Coach Corp.*, 582 F. Supp. 2d 1009, 1024–25 (N.D. Ill. 2008). However, since *Twombly* and *Iqbal*, a plaintiff must allege sufficient facts to state a plausible claim that an agency relationship existed in order to survive a motion to dismiss. See, *e.g.*, *Smith v. State Farm Mut. Auto. Ins. Co.*, 30 F. Supp. 3d 765, 775–76 (N.D. Ill. 2014) (applying *Twombly* and *Iqbal* to an agency claim); *Sefton v. Toyota Motor Sales U.S.A.*, 2010 WL 1506709, at *3 (N.D. Ill. Apr. 14, 2010) (dismissing agency claims where the plaintiff "ha[d] not made any allegations concerning an actual agency relationship beyond purely conclusory statements").

Defendant argues that Plaintiffs' agency allegations are an attempted end run around Graves Amendment preemption, are conclusory and fail to state a plausible claim, and are belied by the fact that Defendant Eagle Transport simply leased the semi-trailer in question to Espinal Trucking any played no further role in Espinal Trucking's use of the semi-trailer (evidenced by, among other things, the lease agreement between Eagle Transport and Espinal Trucking, which says that "Lessee is in no way an agent or representative of Lessor, and Lessee is an independent

contractor and nothing in this lease shall indicate that Lessee has any right to incur or impose any obligation upon the Lessor," [see 57-2, ¶ 17]).[9] In defense, Plaintiffs say only that their complaints contain "extensive allegations that QUIROZ was acting as EAGLE's agent," without pointing to any specific allegations that might provide a plausible inference that such a relationship existed.

The Court agrees that Plaintiffs have failed to allege a plausible claim for agency. A complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). While it is not inconceivable that an owner/lessor might also exercise control over a lessee so as to create an agency relationship, the only relationship presented in Plaintiffs' operative complaints is that Defendant Eagle Transport was a lessor and Defendant Espinal Trucking was a lessee. There are no facts pled in the 500+ pages comprising Plaintiffs' complaints sufficient to support a plausible theory of agency (apparent, implied, or otherwise) between Eagle Transport and any other Defendant, especially in light of Eagle Transport's undisputed role as the lessor in this case. Accordingly, Plaintiffs' agency-based claims against Defendant Eagle Transport are dismissed without prejudice.

Plaintiffs request that, if the Court dismisses its claims based on employer and agency theories of liability, that Plaintiffs be given an opportunity to replead those claims after discovery

---

[9] Plaintiffs argue that Defendant's attachment of the lease agreement to its motion to dismiss is improper, and that the Court should disregard it for purposes of Defendant's motion. However, as mentioned, if the terms of a contract are central to a complaint, a court may consider them in ruling on a motion to dismiss. See *Hongbo Han v. United Continental Holdings, Inc.*, 762 F.3d 598, 601 n.1 (7th Cir. 2014). Here, the lease agreement is central to the complaint in that it shows that Defendant Eagle Transport leased the semi-trailer to Defendant Espinal Trucking. The fact that the terms of the contract disclaim any agency relationship between the two [see 57-2, ¶ 17], while relevant, is not dispositive of the question of whether an agency relationship existed. See, *e.g.*, *Petrovich v. Share Health Plan of Ill., Inc.*, 719 N.E.2d 756, 766–67 (Ill. 1999). Thus, even if the Court were to consider the express terms of the lease agreement, those terms would not warrant dismissal of Plaintiffs' agency claims.

is completed. While the Court's dismissals are without prejudice, and while the Court is bound to freely give leave to amend when justice so requires, the Court is unlikely to allow amendments seeking to hold Defendant Eagle Transport liable under any indirect theories of liability absent some plausible allegation expanding Eagle Transport's role beyond that of an owner/lessor.

### 3. Direct Liability Claims Not Based on Employer Liability

Because of the overlap in some of the theories discussed in this order coupled with the fact that Plaintiffs Johnke, Osburn, and Britton's negligence claims are based on dozens of sub-theories of liability, the Court finds it prudent to better identify Plaintiffs' claims that have survived Defendant's motion to dismiss: namely, direct liability claims not based on employer liability.

The largest swath of claims subject to dismissal is the *indirect* claims—*i.e.*, those that seek to hold Defendant Eagle Transport liable for the negligence of another (usually Defendant Espinal-Quiroz). This category includes the vicarious liability claims that are subject to Graves Amendment preemption, the employer-based claims that seek to hold Defendant liable for the negligence of its alleged statutory employee, and the agency claims. The only *direct* claims being dismissed are the employer-based claims that seek to hold Defendant liable for its own negligence based on its duties as an employer (*e.g.*, Plaintiff Blopleh's "violation of commercial driver's license standards" claims (Counts 40, 43, 46, 49), which seek to hold Defendant Eagle Transport directly liable as an employer pursuant to 49 C.F.R. § 383.37).

What remains are the claims, other than the employer-based claims, that seek to hold Defendant Eagle Transport directly liable for its own negligence.

This delineation maps easily onto Plaintiff Blopleh's complaint: Counts 40, 43, 46, and 49 are dismissed without prejudice, and Plaintiff may proceed on its claims against Defendant

Eagle Transport as presented in Counts 38, 39, 41, 42, 44, 45, 47 and 48.[10] The delineation is less simple for Plaintiffs Johnke, Osburn, and Britton, whose eight combined wrongful death and survival claims are premised on numerous alleged negligent acts, both direct and indirect. The parties—who were on opposite ends of the spectrum regarding the applicability of the Graves Amendment and the viability employer-based allegations—did not break down the sub-claims within these Counts to determine whether each individual component contained an allegation of individual liability, and the Court is not inclined to undertake this task either. However, the Court is optimistic that with the guidance provided by this opinion, Plaintiffs will be able to narrow their claims against Defendant Eagle Transport to focus on non-employer-based claims that seek to hold Defendant Eagle Transport directly liable for its own negligence (*e.g.*, negligent maintenance, negligent entrustment, etc.).

## IV.    Conclusion

For the foregoing reasons, Defendant Eagle Transport's motions to dismiss (14-cv-6992 [54]; 14-cv-7364 [46]; and 14-cv-7917 [56]) are granted in part and denied in part, consistent with this order. Within 14 days of this order, Plaintiffs and Defendant Eagle Transport are instructed to file a proposed discovery schedule incorporating Defendant Eagle Transport into the discovery currently ongoing with the other Defendants. To the extent that the parties are unable to agree on a schedule, they should present their respective positions on the disputed issues in the proposed order.

---

[10] In its reply brief, Defendant Eagle Transport argues for the first time that Plaintiff Blopleh's negligent entrustment and aiding and abetting claims are not adequately pleaded. [See 72, at 14.] Even if the Court were to give Defendant the benefit of the doubt in determining that Defendant did not waive these arguments by failing to raise them in its opening brief, see *TAS Distributing Co., Inc. v. Cummins Engine Co., Inc.*, 491 F.3d 625, 630 (7th Cir. 2007) ("[I]t is well-settled that arguments first made in the reply brief are waived."), these arguments are without merit. Plaintiff Blopleh's claims (Counts 38, 39, 41, 42, 44, 45, 47 and 48) are adequately pled.

Dated: February 5, 2016

Robert M. Dow, Jr.
United States District Judge